UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| **JUSTIN LEE**, on behalf of himself and all others similarly situated,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>**SOUTH WESTERN COMMUNICATIONS, INC.**,<br><br>　　　　　　　　　　Defendant. | No. 3:24-cv-00157-RLY-CSW |

## MEMORANDUM SUPPORTING MOTION FOR FINAL APPROVAL

Pursuant to Federal Rule of Civil Procedure 23, Plaintiff Justin Lee respectfully moves the Court for an order (1) affirming its conditional class certification, for purposes of the Settlement Agreement only; (2) granting final approval to the proposed class action settlement with Defendant, the terms of which are set forth in the Settlement Agreement ("Settlement Agreement" or "SA") attached to the motion for preliminary approval as Exhibit 1; (3) affirming the Court's appointment of Justin Lee as Class Representative; (4) affirming the Court's appointment of Lynn A. Toops and Amina A. Thomas of CohenMalad, LLP and Samuel J. Strauss and Raina C. Borrelli of Strauss Borrelli, PLLC as Class Counsel. The Court previously granted preliminary approval to the Settlement Agreement, notice was sent to Settlement Class Members, and no Class Member has objected to the Settlement Agreement or any part of it. The Court should therefore grant final approval at the hearing scheduled for December 9, 2025, by entering the tendered Final Approval Order submitted herewith, so that the Settlement can become final, the Class Members can obtain the Settlement benefits, and this matter can be resolved.

## BACKGROUND

a. **Plaintiff's Claims**

Defendant, South Western Communications, Inc. ("South Western"), headquartered in Newburgh, Indiana, sells "communication, physical security, and life safety solutions" and has more than 320 employees. (ECF No. 1) ("Compl.") ¶¶ 9, 13.

On or around December 21, 2023, cybercriminals accessed the PII belonging to Plaintiff and the Class. *Id*. ¶ 18. The breach exposed the PII belonging to approximately 4,386 employees.[1] In its breach notice to the class, South Western admitted that "data stored on the SWC network may have been accessed or acquired without authorization between December 21, 2023 and December 22, 2023." *Id*. ¶ 19.

Plaintiff Lee is a former employee with South Western, and he disclosed his PII to work for the company. *Id*. ¶¶ 32, 33. He received South Western's breach notice informing him how the incident impacted his data. *Id*. ¶ 39. Although South Western offered Plaintiff some credit monitoring, Plaintiff alleges that it was not enough to compensate him and the class for their losses. *Id*. ¶ 27. As a result, Plaintiff sued South Western under seven counts, asserting South Western violated its duties to protect the class's data under contract, tort, and statutory principles. *Id*. ¶¶ 87-176. South Western disputes, and does not admit, any of the allegations Plaintiff has made against South Western.

b. **Mediation**

---

[1] Based on publicly available information at the time of filing Plaintiff's Complaint, Plaintiff originally alleged that the class size of impacted individuals contained at least 1,115. Based on informal discovery exchanged in preparation for mediation, Plaintiffs have learned from Defendant that the class size is 4,386 individuals.

In October 2024, South Western filed its Answer and Affirmative Defenses to Plaintiff's Complaint (ECF No. 14). South Western also recognized the risks that litigation posed, including the liability, cost, and delay it would cause. As a result, the parties considered mediating the matter to avoid those risks.

But before Plaintiff agreed to mediate, he conditioned his participation on receiving "informal" discovery first, identifying who the breach impacted and how it impacted them. That effort confirmed what information the breach impacted and how many class members it affected (approximately 4,386). Armed with this information, Plaintiff agreed to mediate with Hon. Heather Welch (Ret.), a mediator experienced in resolving complex actions.

c.  **Settlement Terms**

Plaintiff and Defendant agreed to a class wide settlement, which the Court preliminarily approved on August 26, 2025. The Settlement establishes a $436,670.00 common fund for the benefit of the class. Settlement Agreement § 1.51 (ECF No. 33-1). And that amount is "non-reversionary," meaning it will pay every cent, excepting uncashed checks that class members abandon. *Id*. §§ 2.2, 6.4.

The settlement will benefit class members in four ways. First, it provides class members credit monitoring and identity theft services with $1 million in fraud insurance. *Id*. § 3. Class members need only complete the claim form to receive this benefit, entitling them to three years of protection under three-bureau monitoring. *Id*.

Second, class members can claim their "out-of-pocket" losses and lost time. *Id*. § 4. Out-of-pocket losses include "extraordinary" losses from fraud up to $5,000, and "ordinary" losses spent mitigating the harm the breach caused up to $500. *Id*. To claim these benefits, class members need to show their loss "result[ed] from" the breach. *Id*. For lost time, class members can claim up

3

to five hours of time for "actions taken in response to the Data Breach and the time associated with each action." *Id*. Like out-of-pocket losses, class members need to validate the loss on their claim form. *Id*. Claimants can combine their loss claims up to $6,000. *Id*.

Third, class members will receive cash payments from the settlement no matter their losses. *Id*. § 5. The administrator will pay them from "net settlement fund" after it has covered the settlement's expenses, counsel's fees and expenses, credit monitoring, and loss claims, issuing payments "pro rata" to all class members. *Id*. That number will vary depending on how many claims the administrator receives, but Plaintiff estimates it will be over forty dollars per class member. *Id*. This ensures that all class members can claim a benefit without needing to qualify for "actual" losses.

And fourth, South Western agreed to implement certain adjustments to its security practices. While settling the case, South Western "provided the Plaintiff with informal discovery regarding the Data Breach and the security business practice adjustments that South Western has made to address its information security posture following the Data Breach." *Id*. § 8.1. South Western assumed all costs for the safeguards it has implemented. *Id*. § 8.2. The relief ensures South Western is protecting the PII it still possesses, reducing the chance it will suffer a breach in the future.

The Settlement proposed here was achieved only after an arm's length mediation with Hon. Heather Welch (Ret.), a mediator with significant experience in data breach class actions, and who received submissions in advance, reviewed them, met directly with the parties, and engaged with them to broker an acceptable and well-fashioned outcome.

Following mediation, Plaintiff moved the Court to preliminarily approve the settlement, certify the class for settlement purposes, appoint the Plaintiff as Class Representative, and appoint

the Plaintiff's Counsel as Class Counsel, a motion the Court granted on August 26, 2025. (ECF No. 34). The Court found the agreement's terms were "within the range of a fair, reasonable, and adequate settlement" under the circumstances given that the agreement was negotiated at arm's length, that Counsel adequately represented the class, and that it met the factors for approval under Rule 23. (ECF No. 34 ¶ 6). As a result, the Court ordered the parties to notify the class under the Settlement's terms and start collecting claims, opt-outs, and objections.

Since then, the notice program has succeeded. The administrator reached 97.58% of the class with postcard notice. Declaration of Megan Brunner of Simpluris, Inc. ("Simpluris Decl.") ¶ 10 (attached as **Exhibit A**). No Class Members have opted out or objected to the Settlement. *Id.* ¶ 15. Although the deadline to object or opt out closed on October 25, 2025, the deadline to claim benefits remains open until December 24, 2025. Simpluris's success is no surprise given its record. As it notes, it has notified classes in over 9,000 cases, including cases ranging from antitrust, to securities fraud, and government enforcement matters. *Id.* ¶ 2. As a result, given the results and Simpluris's experience, Plaintiff believes Simpluris delivered the "best practicable" notice under the circumstances. Declaration of Lynn A. Toops, ("Toops Decl.") ¶ 15, attached as **Exhibit B.**

Given this excellent reaction from the class, the Court should approve the Settlement as fair and reasonable.

## ARGUMENT

Approval of class action settlement is analyzed under Federal Rule of Civil Procedure 23, which "entails a three-step process." *Probst v. Eli Lilly & Co. Lilly USA LLC*, 2023 WL 11051728, at *1 (S.D. Ind. Nov. 21, 2023). First, the Court must "preliminarily approve" settlement as "likely" to be approved under Rule 23. *Id.* Second, the parties must then notify the class about the settlement's terms. *Id.* And third, the Court then "holds a fairness hearing to approve the settlement

"for good." *Id.* Because the Court has "preliminarily" approved the settlement and the parties have notified the class, the parties are on step three: final approval. As explained below, Plaintiff meets all factors needed to satisfy final approval because (a) the Settlement meets the requirements for approval, (b) the Class meets the requirements for certification, (c) the Notice Program complies with due process and Rule 23, and (d) the Plaintiff and Plaintiff's Counsel fairly and adequately represents the Settlement Class.

    **a. The Settlement Meets the Factors for Approval**

Approving a class settlement requires the Court to consider six factors under Seventh Circuit caselaw. *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014). Those factors are: "the strength of plaintiff's case," the case's complexity, any opposition to the settlement, counsel's opinion, the reaction of members of the class to the settlement, and the "stage of proceedings." *Id*. Rule 23 also articulates four factors for approval: whether plaintiff's "adequately represented" the class, whether the proposal was "negotiated at arm's length," the relief provided, and whether the relief is distributed "equitably." Fed. R. Civ. P. 23. Because the *Wong* and Rule 23 factors "overlap" with one another, Plaintiff consolidates their analysis below. *Berglund v. Matthews Senior Hous. LLC*, 2024 WL 773753 32044, at *2 (E.D. Wis. Feb. 26, 2024) (Rule 23's "considerations overlap with the factors articulated by the Seventh Circuit").

    *i. Adequate Representation and Counsel's Opinion*

Plaintiff and their Counsel have "adequately" represented the class—securing a settlement that accomplishes what they set out to achieve with this case. There are no "conflicting interests" between plaintiff, their Counsel, and the class, and there is "no reason to doubt the performance of counsel" or their clients. *Probst*, 2023 WL 11051728, at *3. Under conditions like this—with experienced counsel recommending the settlement—courts approve settlements even when the

6

parties reach them after "minimum litigation." *Id.* In fact, Plaintiff's Counsel conditioned mediation on obtaining "informal discovery," ensuring that Plaintiff had the information needed to negotiate an "adequate" settlement for the class. Toops Decl. ¶¶ 5-6. Armed with that information and Counsel's experience, Plaintiff negotiated a $436,670.00 settlement that delivers the relief wanted when Plaintiff filed this case. Toops Decl. ¶ 9. This is not to mention that Counsel have represented data breach victims across the country and reached settlements that courts routinely approve, meaning the Court should give weight to their opinion approving of this settlement. *Id.* ¶ 14. *Wong*, 773 F.3d 859, 863 (considering the "opinion of competent counsel").

In other words, the Court should find Plaintiff has satisfied this factor for the same reason they satisfy the adequacy factor for class certification. Under either analysis, Plaintiff has established his adequacy.

ii. *Arm's Length Negotiations*

The Court should approve the settlement in the "normal" course because the parties reached it at arm's length. Toops Decl. ¶¶ 5-6; *Burkholder v. City of Fort Wayne*, 750 F. Supp. 2d 990, 995 (N.D. Ind. 2010) ("Normally, a settlement is approved where it is the result of contentious arm's-length negotiations, which were undertaken in good faith by counsel") (citations and quotations omitted). That is the case here, as the settlement was "reached because of serious and non-collusive, arm's-length negotiations, with both sides represented by experienced counsel familiar with the applicable facts and law." *In re Harvey*, 2023 WL 3240878, at *2 (S.D. Ind. May 3, 2023). Indeed, the Seventh Circuit holds that negotiation is at "arm's length" when the settlement was "proposed by an experienced third-party mediator" like the settlement here. *Wong*, 773 F.3d 859, 864. Nothing otherwise suggests the parties subverted the mediator and "colluded" on the result; indeed, the results show the opposite given the benefits secured. Toops Decl. ¶ 6.

7

As a result, the Court should find Plaintiff has satisfied this factor.

*iii. The Relief Secured Under the Circumstances*

Plaintiff settled this case despite the risks it presented. Rule 23(e) requires the Court to "take into account" the "costs, risks, and delay of trial and appeal," how the settlement distributes benefits, the proposed attorneys' fees, and any "side" agreements when evaluating this factor. The Rule's counterpart factor under caselaw holds that the "strength of plaintiff's case" is the "most important factor" when approving a settlement. *Adams v. Aztar Ind. Gaming Co.*, 2023 WL 2197075, at *4 (S.D. Ind. Apr. 4, 2023).

This factor favors the parties' agreement given its benefits it delivers under the circumstances. Plaintiff sued South Western to compensate the class for its losses and protect his PII following the breach, and the settlement achieves just that. With credit monitoring and identity theft insurance, class members can mitigate the harm the breach may cause. And if they suffered harm, the settlement entitles them to claim their "out-of-pocket" losses and time lost. This is not to mention all class members will receive cash benefits even if they suffered no harm.

These benefits stand out when putting them in context. *See Hammond v. The Bank of N.Y Mellon Corp.*, 2010 WL 2643307, at *1 (S.D.N.Y June 25, 2010) (collecting data breach cases dismissed at Rule 12(b)(6) or Rule 56 stage). Even as courts have allowed data breach cases to proceed past the motion to dismiss stage, they have not settled on when litigants can certify classes or survive summary judgment. As on federal district court observed when approving a settlement with similar class relief: "Data breach litigation is evolving; there is no guarantee of the ultimate result." *Fox v. Iowa Health Sys.*, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021) (citing *Gordon v. Chipotle Mexican Grill, Inc.*, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019)). Given this

litigation environment, the results achieved here render settlement "reasonable" under all standards.

And to proposed Class Counsel's knowledge, "no data breach case has gone to trial." Max Meglio, Note, *Embracing Insecurity: Harm Reduction Through a No-Fault Approach to Consumer Data Breach Litigation*, 61 B.C. L. REV. 1223, 1235 (2020). As a result, trying this case would raise the risk that Plaintiff could lose all claims, rendering his odds difficult to evaluate by any party. In sum, the class will not benefit if the Court declines to certify it, reduces its size, or finds they cannot prove their claims. The parties' settlement not only avoids those risks, but affords class members relief now rather than years later. Toops Decl., ¶ 12; *In re Harvey*, 2023 WL 3240878, at *3 (favoring settlement when "[t]he costs, risks, and delays of trial and appeal could've delayed any recovery for several years and would have risked the class recovering nothing had this court or an appellate court ruled against them[,]"). Not even winning at trial guarantees victory, rending the settlement a victory. *Adams*, 2023 WL 2197075, at *4 ("The most obvious risk is if Plaintiff is not successful on her claims. Even if successful on the merits at some future time, a future victory is not as valuable as a present victory.").

Last, Plaintiff's attorney fee request is "within the range of approval" because it requests one-third of the fund. *Id.* at *3 ("[C]ourts in this district and around the Seventh Circuit routinely award one-third of the common fund."). In fact, "[t]he typical contingent fee is between 33 and 40 percent[.]" *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998). Thus, Plaintiff's request is "within the range of likely approval" and the Court will decide it after the Plaintiff's petition for fees in any event.

As a result, this factor favors approving the settlement.

9

  *iv. Equitable treatment*

  Last, the Court reviews the settlement for equity. When evaluating this factor, courts allow the parties to distribute benefits according to a class member's loss. *Adams*, 2023 WL 2197075, at *3 ("[M]embers will receive their pro rate portion of the allocation based on their individual damage figure compared to the total damage amount."). Indeed, when class members receive benefits "pro rata," that favors finding equity in the settlement. *Probst*, 2023 WL 11051728, at *5 ("[P]ro rata distribution of settlement funds indicates equal treatment") (citing *T.K. Through Leshore v. Bytendance Tech. Co.*, 2022 WL 888943, at 14 (N.D. Ill. Mar. 25, 2022)). In other words, benefits need to be "equal" to be "equitable"—allowing Plaintiff to award benefits according to a class member's loss.

  Under this principle, the court should find the settlement is "equitable" under Rule 23. It guarantees class members a right to claim their "out-of-pocket" losses and lost time, a benefit meant to "equitably" acknowledge that some class members have experienced "actual" harm resulting from the breach while others did not. But, in any event, *all* class members can claim the cash benefit no matter their losses, and receive it *pro rata*, assuring equitable treatment for all class members. As a result, the Court should find Plaintiff has satisfied this factor.

  *v. The Class's Reaction*

  The class welcomed the parties' settlement, establishing a claims rate that exceeds those achieved in other data breach cases, with no class member objecting to the settlement's terms. What's more, only one class member has opted out. As a result, the Court should find this settlement delivers benefits that exceed those found in other data breach cases.

  **b. The Court Should Affirm Class Certification for Approval Purposes**

The Court certified the class for settlement purposes when it preliminarily approved the agreement. And there is nothing about this case that would counsel otherwise; indeed, nothing has changed. The class still meets the requirements of numerosity, commonality, typicality, and adequacy, and because common issues predominate and a class action is the superior means by which to resolve class member claims, the Court should finally certify the Settlement Class for settlement purposes. When nothing has changed relative to the Rule 23(a) factors and pertinent Rule 23(b) factors since preliminary approval, the decision should be made final. As described above, and in further detail below, the class should remain certified for approval purposes, because the Class satisfies those aforementioned Rule 23 requirements.

   i. *The Class is Sufficiently Numerous*

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder "would be impracticable." *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 859 (7th Cir. 2017). Under this standard, even 40 class members is "often regarded as sufficient. *Id.* Thus, with 4,386 class members here, Plaintiff easily satisfies this factor.

   ii. *There are Common Questions of Law and Fact*

Rule 23(a)(2) requires only that there be a single common question of law or fact in order for the court to certify the class action. *See Butlers v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013). As the Supreme Court explained in *Dukes*, the common question must be "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Plaintiff satisfies this factor because the facts at issue in the Plaintiff's complaint give "rise to the claims of other class members and [are] based on the same legal theory." *Lacy v. Cook Cnty.*,

11

*Ill.*, 897 F.3d 847, 866 (7th Cir. 2018). Whether South Western had a duty to protect Plaintiff's PII, whether it breached that duty, whether that the breach harmed Plaintiff, and what Plaintiff can demand for relief are "common" to the class. Any "factual differences" between their experiences" will not preclude certification," as "the similarity of legal theory is more important than factual similarity. *Palmer v. Combined Ins. Co. of Am.*, 217 F.R.D. 430, 437 (N.D. Ill. 2003). Thus, Plaintiff satisfies the factor for commonality.

   *iii. Plaintiff's Claims are Typical of Those of the Settlement Class*

Rule 23(a)(3) requires that the claims of the class representatives be "typical of the claims . . . of the class. The typicality requirement "is meant to ensure that the named representative's claims have the same essential characteristics as the claims of the class at large. *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (citations omitted). Thus, "[a] claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and her claims are based on the same legal theory." *Id.*

Here, Plaintiff's claims are identical to, and not in conflict with, the claims of the Settlement Class Members. The claims arise from the same event, the Data Breach, and they arise from the same practice course of conduct, namely the Defendant's failure to adhere to industry standards and protect the Plaintiff's PII. Plaintiff alleges a common pattern of wrongdoing, and would have presented the same evidence, based on the same legal theories, notwithstanding any factual variances in the position of each Settlement Class member. Thus, Plaintiff's claims are typical of those of the Settlement Class.

   *iv. Plaintiff and their Counsel Satisfy the Adequacy Requirements*

The final requirement of Rule 23(a), as stated by Rule 23(a)(4), is that the "representative party will fairly and adequately protect the interests of the class. There are two criteria for

determining adequacy: "one relates to the adequacy of the named plaintiff's representation of the class and requires that there be no conflict between the interests of the representative and of those in the class in general; the other relates to the adequacy of class counsel's representation. *In re ready-Mixed Concrete Antitrust Litig.*, 261 F.R.D. 154, 168 (S.D. Ind. 2009).

Here, both prongs are met. First, there is no evidence Plaintiff's interest conflicts with the class's nor do the facts suggest there would be. Plaintiff seeks the same relief as the class based on the same facts. Toops Decl. ¶ 3. The fact that Plaintiff also seeks a service award for himself does not change the analysis, as the settlement does not guarantee them.

Second, Plaintiff's Counsel's supporting declaration shows Counsel are "adequate" based on their qualifications and experience, including dozens of data breach cases they have filed, litigated, and settled across the courts. *See generally* Motion for Preliminary Approval, ECF No. 33-3. As such, they negotiated a favorable settlement for the Settlement Class after hard fought negotiations. Accordingly, Plaintiff and his Counsel satisfy the adequacy requirement of Rule 23.

    v. *Plaintiff's Claims Satisfy the Prerequisites of Rule 23(b)*

In addition to satisfying Rule 23(a), Plaintiff must show that the putative class falls under at least one of the three subsections of Rule 23(b). Here, the Settlement Class qualifies under at least Rule 23(b)(3), which applies where the court finds (1) the question of law or fact common to class members *predominates* over any questions affecting only individual members, and (2) that a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy.

The predominance inquiry under Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Here, the Settlement Class is sufficiently cohesive. As described above, the Settlement

13

Class members share common legal grievances arising from the Data Breach and South Western's failure to protect their PII.

The superiority inquiry looks at four factors: (1) the class members' interest in individually controlling the prosecution or defense by separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability of concentrating the litigation of the claims in a particular forums; and (4) the manageability of the class at trial. Here, all the factors point towards final approval of certification of the class. There is not a strong interest for individual control because class members' claims are so closely related to the claims of others that litigation by the Plaintiff will achieve their ends. Further, Counsel is unaware of any other similar litigation commenced by members of the putative class. Finally, it is desirable and manageable to resolve these claims before this Court, as South Western is located in this District.

Thus, the Court should certify the Class as it meets the requirements of Rule 23.

c. **The Court Should Approve the Notice Program Because It Succeeded and Complied with Due Process**

After the Court preliminarily approved the settlement and certified the class, it directed "notice in a reasonable manner to all class members" to inform them about the proposed settlement. Fed. R. Civ. P. 23(e)(1)(B). This is because class members are entitled to the "best notice that is practicable under the circumstances." *Id.* And that is what the parties and Simpluris achieved.

To comply with due process, notice must be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997). Notice must explain: (i) the action; (ii) how the class is defined; (iii) the class claims, issue, or defenses; (iv) that a class member appear through an attorney; (v) that the court will exclude from the class any member

14

who requests it; (vi) the time and manner for requesting exclusion; and (vii) the binding effect that class judgment has on members. Fed. R. Civ. P. 23(c)(2)(B). Under caselaw, the parties' notice could be "one or more of the following: United States mail, electronic means, or other appropriate means." *Id.*

Like the notice program here, courts recognize mail notice is often the "best notice practicable to the class." *In re Harvey*, 2023 WL 3240878, at *6. Even just one mailer may constitute "the best notice practicable under the circumstances," satisfying "the notice requirements of Rule 23" and the "due-process requirement as well." *Vassalle v. Midland Funding, LLC*, 2014 WL 5162380, at *11 (N.D. Ohio Oct. 14, 2014). So long as the notice "clearly and concisely state in plain, easily understood language" the settlement's terms, the Court may approve them. Fed. R. Civ. P. 23(c)(2)(B).

Here, the notice program relied on data supplied by the Defendant with class member addresses. Because these class members were or are Defendant's employees, that data was reliable and will lead to the "best practicable" notice under the circumstances. Even if a notice is "returned undeliverable," Simpluris re-sent notice and skip traced an address when needed. Given the address information provided by Defendant, and its reliability under the circumstances, the parties selected mail notices, a choice that resulted in a 97.58% notice rate. Simpluris Decl. ¶ 10. That exceeds the 70% norm that parties hope for in class cases. *Id*. As a result, the program satisfied Rule 23, and the Court should approve it.

### d. The Court should Affirm Plaintiff as Class Representative and Affirm Plaintiff's Counsel as Class Counsel, Because Both Fairly and Adequately Protected the Settlement Class's Interests.

As explained above, Plaintiff and his Counsel have fairly and adequately represented the class—securing a preliminarily approved settlement that accomplishes what they set out to achieve with this case. There are no conflicting interests between Plaintiff, his Counsel, and the Settlement

Class, and Counsel was able to negotiate the favorable Settlement that was preliminary approved Settlement Agreement for $436,670.00 and delivers the relief wanted when the case was filed. As a result, the Court should finally approve and appoint Plaintiff and Counsel as Class Representative and Class Counsel respectively.

## CONCLUSION

For these reasons, the Court should grant Plaintiff's motion and order the parties to distribute the class benefits.

Dated: November 26, 2025
                                          */s/ Lynn A. Toops*
                                          Lynn A. Toops, No. 26386-49
                                          Amina Thomas, No. 34451-49
                                          **COHENMALAD, LLP**
                                          One Indiana Square, Suite 1400
                                          Indianapolis, IN 46204
                                          Tel: (317) 636-6481
                                          ltoops@cohenmalad.com
                                          athomas@cohenmalad.com

                                          Samuel J. Strauss (*pro hac vice*)
                                          Raina C. Borrelli (*pro hac vice*)
                                          **STRAUSS BORRELLI PLLC**
                                          980 N Michigan Avenue, Suite 1610
                                          Chicago IL, 60611
                                          Tel: (872) 263-1100
                                          raina@straussborrelli.com
                                          sam@straussborrelli.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 26, 2025, the foregoing was filed electronically via the CM/ECF system, which will serve all counsel of record via electronic mail.

/s/ *Lynn A. Toops*
Lynn A. Toops